A–115
ROBERT FEUCHTBAUM AND JACQUELINE FEUCHTBAUM, PLAINTIFFS-RESPONDENTS, v. ANSEHNO CONSTANTINI, DEFENDANT.

SHIRLEY MAGAHAN AND RALPH MAGAHAN, PLAINTIFFS-APPELLANTS, v. GLEN R. ERSPAMER AND HAROLD H. CONKLIN, JR., DEFENDANTS-RESPONDENTS.

A–123
STEPHEN LaGRECA AND ANTOINETTE LaGRECA, PLAINTIFFS-APPELLANTS, v. LOUIS V. HARS, DEFENDANT-RESPONDENT.

Argued March 23, 1971 and May 10, 1971—Decided July 21, 1971.

*Mr. Richard M. Fishkin* argued the cause for plaintiffs-respondents Feuchtbaum (*Messrs. Fishkin and Fleisher,* attorneys).

*Mr. H. Alton Neff* argued the cause for plaintiffs-appellants Magahan (*Messrs. Neff and Neff,* attorneys).

*Mr. Stephen J. Oppenheim* argued the cause for defendant-respondent Erspamer and Unsatisfied Claim and Judgment Fund (*Mr. George N. Arvanitis* on the brief; *Messrs. Carton, Nary, Witt and Arvanitis,* attorneys) ; *Mr. Salvatore L. Franchino* submitted a brief on behalf of defendant Constantini and Unsatisfied Claim and Judgment Fund (*Mr. John F. Richardson,* on the brief).

*Mr. Louis F. Locasio* argued the cause for plaintiffs-appellants LaGreca (*Mr. Warren W. Wilentz,* of counsel; *Messrs. Wilentz, Goldman and Spitzer,* attorneys).

*Mr. William T. McElroy* argued the cause for defendant-respondent Hars (*Mr. James B. Moran,* of counsel and on the brief; *Messrs. Hughes, McElroy, Connell, Foley and Geiser,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. These actions arise out of automobile accidents and have the common feature that the defendant, a resident of our State at the time of the occurrence, thereafter disappeared and could not be served with process by any of the usual modes of service. Hence plaintiffs asked leave to make service another way. In *LaGreca v. Hars,* plaintiff sought to serve defendant by service on defendant's insurance carrier. The trial court denied the application. In *Feuchtbaum v. Constantini* and *Magahan v. Erspamer,* there being no insurance coverage, plaintiffs sought to serve defendants by serving the Unsatisfied Claim and Judgment Fund, which, as we will later develop, is liable for injuries negligently inflicted by an uninsured motorist. In *Feuchtbaum,* plaintiff's motion was granted. 110 *N. J. Super.* 515 (Law Div. 1970). In *Magahan* it was denied. The Appellate Division granted leave to appeal in all of these cases and we certified them before argument in that court.

*R.* 4:4–4 deals with service of process in actions in personam. Paragraph (a) authorizes the conventional service

by delivery of a copy of the summons and complaint to an individual personally; or by leaving the copy at his dwelling house or usual place of abode with a competent member of his family of the age of 14 years or over then residing there; or by delivering the copy to a person authorized by appointment or by law to receive service of process on his behalf. None of the defendants could be served under that paragraph of the rule.

Paragraph (e) provides for substituted service by registered or certified mail, return receipt requested, addressed to defendant's dwelling house or usual place of abode or at his place of business or employment. None of the defendants could be served in that way because defendants moved after the accidents occurred and could not be located. Paragraph (e) also permits service outside the State, but again, since defendants could not be found, service could not be made under that provision.

Paragraph (h) provides for service upon any defendant "as may be provided by law." With respect to motor vehicle accidents, the Legislature has authorized service upon the Director of the Division of Motor Vehicles, both with respect to a motorist who was a nonresident at the time of the accident, *N. J. S. A.* 39:7-2, and a motorist who was then a resident but thereafter became a nonresident and cannot be served here because of his nonresidence. *N. J. S. A.* 39:7-2.1. The Director is required to transmit the process as provided in *N. J. S. A.* 39:7-3. The statute, however, does not expressly deal with the situations before us in which a motorist, resident at the time of the accident, cannot be found.[1]

---

[1]*N. J. S. A.* 39:7-3(e) does provide:

Notice of such service and a copy of the summons and complaint may be served on the defendant in any other manner that the court in which the cause is pending shall deem sufficient and expedient.

It thus contemplates some substituted step in aid of the statutory method of service.

Being unable to achieve service by any of the methods set forth above, plaintiffs turned to the final provision of *R.* 4:4–4, added by amendment effective September 8, 1969, which reads:

(i) If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law.

In each of the cases before us, it appears that the defendant knew he was involved in an accident; that thereafter he moved from his local residence, leaving no forwarding address; that he did not advise the plaintiffs, or the Director of Motor Vehicles, or the police, of his whereabouts; that he took no apparent step to keep informed with respect to the claims against him arising out of the occurrence. It also appears satisfactorily that plaintiffs conducted ample investigations which exhausted all leads. In short, unless plaintiffs are permitted to make service under paragraph (i) of the rule, they will be without remedy.

I

## LaGRECA v. HARS

As mentioned above, Hars held a liability policy. Plaintiff sought an order permitting service upon defendant by service upon the carrier. We note that plaintiff does not seek to maintain a direct action against the carrier or to attach Hars' interest in the insurance policy. Rather the action is against Hars personally and the thesis advanced is that the carrier should be deemed to be the agent of the insured for the purpose of service upon the insured when he cannot be found upon diligent inquiry.

Plaintiffs based their application to the trial court upon *R.* 4:4–4(i) which we quoted above, and upon *Ledbetter v. Schnur,* 107 *N. J. Super.* 479 (Law Div. 1969), which authorized such service upon a carrier on the basis of that

paragraph of our rule. The trial court held the facts brought the case within *Ledbetter* but that *Ledbetter* should not be applied because LaGreca's complaint had been dismissed for lack of prosecution before *Ledbetter* and was restored to the list by motion after *Ledbetter* was decided and at a date when, if the action were then instituted, the claim would have been barred by the statute of limitations.

■ ■ We see no reason to deny the application of *R.* 4:4-4(i) to claims for relief which antedated it. The rule is purely procedural. Procedural statutes and rules of court are given retrospective application if vested rights are not thereby disturbed. *Morin v. Becker,* 6 *N. J.* 457, 470–471 (1951) ; *Neel v. Ball,* 6 *N. J.* 546, 551 (1951) ; *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372, 381 (1954) ; *Wildwood v. Neiman,* 44 *N. J. Super.* 209, 214 (App. Div. 1957) ; *Tsibikas v. Morrof,* 5 *N. J. Super.* 306, 309 (App. Div. 1949). There can be no vested right to escape service of process. *McGee v. International Life Ins. Co.,* 355 *U. S.* 220, 224, 78 S. Ct. 199, 201 2 *L. Ed.* 2d 223, 226–227 (1957). Thus most jurisdictions hold their "long-arm" statutes may be applied retrospectively. 2 *Sutherland, Statutory Construction* (3d ed. 1943) § 2210, supp. (1971), *p.* 36.

The trial court was concerned that many cases theretofore dismissed for lack of prosecution might be revived to take advantage of a new mode of service. Whether a suit thus dismissed should be reinstated after the statute of limitations has run is a different question. The order here was properly made. The suit had been instituted within time and there is no doubt that plaintiffs sought in good faith to have process served expeditiously. Defendant of course was not entitled to have the suit dismissed because he could not be served. The motion to dismiss for lack of prosecution was the court's own, routine motion. *R.* 1:13–7. Defendant was not a party to the motion; in fact defendant had not been served with process and had not appeared. Apparently plaintiff did not

respond to the court's motion. If he had, the action would not have been dismissed, since a claimant who cannot effect service is entitled to have his suit remain to protect his claim against the operation of the statute of limitations. The trial court in vacating the judgment of dismissal did no more than restore a case which in justice should not have been dismissed.

With respect to the application of *R.* 4:4–4(i), we see no difference between an action which was pending when the rule was adopted and a prior action which was thereafter revived. We come then to the question whether the trial court should have ordered service on defendant by service on the insurance carrier.

As already noted, the trial court had sustained such service in *Ledbetter, supra,* 107 *N. J. Super.* 479. Service upon a carrier was also authorized in *Rudikoff v. Byrne,* 101 *N. J. Super.* 29 (Law Div. 1968), and *Young v. Bunny Bazaar, Inc.,* 107 *N. J. Super.* 320 (Law Div. 1969). In *Rudikoff,* the carrier was served in New York, and the trial court relied upon the fact that the law of New York permitted service upon an insurer when the insured could not be found. See *R.* 4:4–4(e) and 4:4–5(a). In *Young,* the court relied upon *R.* 4:4–4(i) but also upon the additional thesis that the carrier was estopped to question service because its adjusting firm had negotiated with plaintiff for the settlement of the claim.

The automobile introduced special problems with respect to the service of process. Statutes were enacted many years ago providing for service upon a nonresident motorist by service upon a statutory agent, deemed to have been designated by the motorist by the act of driving within the State. Such statutes are upheld "if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice." *Wuchter v. Pizzutti,* 276 *U. S.* 13, 24, 48 S. Ct. 259, 262, 72 *L. Ed.* 446, 451 (1928). A provision re-

quiring the statutory agent to mail the summons and complaint to the nonresident motorist sufficed. But *Wuchter* did not require that notice be actually received. It demanded no more than that the statutory plan embody a reasonable probability of such receipt. Hence service may be effected under such statutes even though the process mailed by the statutory agent to the motorist does not reach him. *Hendershot v. Ferkel*, 144 *Ohio St.* 112, 56 *N. E.* 2d 205 (Sup. Ct. 1944); *Skinner v. Mueller*, 1 *Wis.* 2d 328, 84 *N. W.* 2d 71 (Sup. Ct. 1957). In *Manley v. Nelson*, 50 *Haw.* 484, 443 *P.* 2d 155 (Sup. Ct. 1968), *cert.* denied *sub nom. Soszka v. Manganaro*, 394 *U. S.* 573, 89 *S. Ct.* 1299, 22 *L. Ed.* 2d 555 (1969), where the statute required actual receipt by defendant of the process mailed by the statutory agent, it was held that service could validly be made under a further statutory provision authorizing publication if the process mailed by the statutory agent did not reach the defendant. *Manley* added (443 *P.* 2d at 160):

> If a nonresident operator of a motor vehicle involved in an accident or collision sincerely desires to be informed when suit is commenced, it is a simple matter for him to leave with a person injured or or suffering damages or involved in the collision or with a police officer investigating the accident his permanent address and if and when he changes his address to so notify the person or persons of the change.

The guiding principles were set forth in *Mullane v. Central Hanover Bank and Trust Co.*, 339 *U. S.* 306, 70 S. Ct. 652, 94 *L. Ed.* 865 (1950). The case involved an accounting with respect to a fund created by the pooling for administration of a large number of small trust estates. The issue was whether the beneficiaries were bound by the judgment on the accounting when the only service upon them was publication naming the trust estates. The court held service by publication, although sufficient for beneficiaries whose interests or addresses were unknown to the trustee, was inadequate with respect to beneficiaries who were known and

could be informed "personally of the accounting, at least by ordinary mail to the record addresses." 339 *U. S.* at 318, 70 S. Ct. at 659, 94 *L. Ed.* at 875. It was there urged that since the trustees sought exoneration from surcharge by a judgment settling the account, the action was in personam rather than purely in rem and hence the service of process should be by a method required in an in personam action. The Supreme Court declined to accept a distinction between an action against a person and action concerning a *res,* holding that in either case the interest of the parties and of the State requires some feasible mode of settling controversies. The Court said (339 *U. S.* at 314–315, 70 S. Ct. at 657, 94 *L. Ed.* at 873) :

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * but if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."

*Mullane* recognized that "in the case of persons missing or unknown employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." 339 *U. S.* at 317, 70 *S. Ct.* at 658, 94 *L. Ed.* at 875. This was repeated in *Walker v. Hutchinson,* 352 *U. S.* 112, 115–116, 77 S. Ct. 200, 202–203, 1 *L. Ed. 2d* 178, 182 (1956). *Walker* said of *Mullane* that it established "the rule that, *if feasible,* notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." (Emphasis ours.) 352 *U. S.* at 115, 77 S. Ct. at 202, 1 *L. Ed. 2d* at 182. Thus *Walker* held service by publication alone would not support a judgment in eminent domain

when the names and addresses of the owners were readily obtainable and hence it was feasible to give notice by a mode more likely to succeed. To the same effect is *Schroeder v. City of New York,* 371 *U. S.* 208, 83 S. Ct. 279, 9 *L. Ed. 2d* 255 (1962). But circumstances may justify service by process which cannot be said to assure the actual receipt of notice. So in *Boddie v. Connecticut,* 401 *U. S.* 371, 382, 91 S. Ct. 780, 788, 28 *L. Ed. 2d* 113, 121 (1971), in which due process was found to demand that an indigent be permitted to pursue a divorce action without payment of service-of-process costs, the Court said that "reliable alternatives exist to service of process by a state-paid sheriff if the State is unwilling to assume the cost of official service," adding:

* * * This is perforce true of service by publication which is the method of notice least calculated to bring to a potential defendant's attention the pendency of judicial proceedings. See Mullane v. Central Hanover Trust Co., 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950). We think in this case service at defendant's last known address by mail and posted notice is equally effective as publication in a newspaper.

■ *Dobkin v. Chapman,* 21 *N. Y. 2d* 490, 289 *N. Y. S. 2d* 161, 236 *N. E. 2d* 451 (Ct. App. 1968), is in point. It too involved an action arising out of an automobile accident. Defendant could not be found. The New York statute provided that if service through the methods there detailed was impracticable, service could be made in such manner as the court directs. This statutory provision was construed to include any method permitted by due process of law. The trial court directed that service be made (1) by mailing a copy of the summons and complaint to defendant's last known address and (2) by delivering a copy thereof to the insurance carrier. The Court of Appeals upheld the order. Pointing out that due process "has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the State under the circumstances of the particular case," 21 *N. Y. 2d* at 502, 289

*N. Y. S. 2d* at 170, 236 *N. E. 2d* at 458, the court found compelling reason to say that due process was satisfied by the service there ordered upon a weighing of "the plaintiff's need, the public interest, the reasonableness of plaintiff's efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant's interests," 21 *N. Y. 2d* at 503, 289 *N. Y. S. 2d* at 172, 236 *N. E. 2d* at 458. The same considerations obtain in the matter before us, and for the same reasons we conclude that substituted service may be made even though it is far from certain that the defendant will in fact receive notice of the action.

Plaintiff's need is evident enough. Plaintiff has been injured. There are two alternate sources of satisfaction intended for his protection and yet neither can be reached if defendant's argument should prevail. There is the policy of liability insurance, in which plaintiff has an interest by virtue of *N. J. S. A.* 17:28–2. *In re Gardinier,* 40 *N. J.* 261, 265 (1963). There is also a fund (herein Fund) established by the Unsatisfied Claim and Judgment Fund Law, *N. J. S. A.* 39:6–61, *et seq.,* for the compensation of the victim of a negligent motorist who is uninsured. It is unjust to deny relief to plaintiff because the alleged wrongdoer disappeared. The public interest in the prosecution of plaintiff's claim is equally clear. The statutes just cited reveal a concern for a plaintiff's just compensation. Also of possible application in a given case is the Motor Vehicle Security-Responsibility Law, which binds the insurer to satisfy a claim notwithstanding breaches of the policy by the insured. *N. J. S. A.* 39:6–48.

The remaining consideration is fairness to the defendant. As to this, assuming he was aware of an involvement in an accident, as is the case here, it is the defendant's own behavior which, so far as we know, will deprive him of notice of the suit if it fails to reach him. Defendant gave the police an address in Hillside, New Jersey, where he apparently did live at that time. Later defendant departed, leaving

no forwarding address with the postal authorities, or the police, or his employer, or the plaintiff, or with his carrier according to its representations. As *Dobkin* said, "in an automobile case, no defendant need be without notice unless he chooses and wants to be," 21 *N. Y. 2d* at 504, 289 *N. Y. S. 2d* at 173, 236 *N. E. 2d* at 459. Further, the carrier's interest in defeating plaintiff's claim will coincide with defendant's interest, and if the carrier should be able to disclaim because of defendant's disappearance (an issue which was recently dealt with in *Dougherty v. Hanover Insurance Co.*, 114 *N. J. Super.* 483 (Law Div. 1971), and upon which we of course express no view here), the Fund will be obliged to take over, *N. J. S. A.* 39:6–65, and again, its interest in the defense of the case will be the same as defendant's. Thus there is a substantial promise that the merits of the controversy between plaintiff and defendant will be handled fairly. And, finally, there may remain an opportunity for defendant at some later date to seek relief from a judgment against him upon a just showing to that end. *R.* 4:50–1.

Upon a consideration of all of the interests involved, the balance must be struck in plaintiff's favor. Substituted service should be ordered. We agree that service upon the carrier would be appropriate. By its contract the carrier has the right and the duty to defend any action against the insured. The carrier thus has a representative role, which, though it does not include an express agency to accept service of process, is nonetheless relevant when process cannot otherwise be served upon the insured. Realistically there is more of a chance that defendant will learn of the suit by such service than through available alternatives, for the carrier is likely to have an interest in finding him. Nonetheless the interests of the carrier and of the defendant may not coincide. The judgment may exceed the policy limits, or the carrier may disclaim, or the carrier, if bound to pay, may conceivably be entitled to assert a claim over against defendant. Hence it is desirable that an effort to reach defendant be made by still another channel. To that end,

service by ordinary mail to defendant at his last known address would appear to be the best available course. Thus there should be service upon defendant both by service on the carrier and by such ordinary mail.

## II

### FEUCHTBAUM v. CONSTANTINI
### and
### MAGAHAN v. ERSPAMER

These plaintiffs seek ultimately to receive compensation under the Unsatisfied Claim and Judgment Fund Law, *N. J. S. A.* 39:6–61, *et seq.* The Fund was established for the protection, within stated limits and terms, of persons injured by the negligence of an uninsured motorist or an unknown "hit-and-run" driver. Plaintiffs proceed on the premise that their defendants were uninsured, which hypothesis brings the matters within the ambit of the statute. But plaintiffs cannot prevail against the Fund unless they obtain judgments against their defendants. The Fund seeks to avoid payment by challenging the sufficiency of attempts to serve the defendants.

It is difficult to understand why the Fund should not be devoted to the payment of the very claims it was created to pay. The Fund correctly states that in the circumstances of the present cases the Fund statute does not authorize a direct claim against the Fund as it does with respect to a hit-and-run driver. *De Vivo v. Simpkson,* 51 *N. J.* 48 (1968); *Tinsman v. Parsekian,* 65 *N. J. Super.* 217 (App. Div. 1961); *Lancellotti v. Umbach,* 60 *N. J. Super.* 226 (Law Div. 1960). But the question is whether a mode of service should be permitted which will enable the injured party to obtain the judgment which is prerequisite to the liability of the Fund.

*Dobkin v. Chapman, supra,* 21 *N. Y.* 2*d* 490, 289 *N. Y. S.* 2*d* 161, 236 *N. E.* 2*d* 451, also involved claims against uninsured drivers for which the Motor Vehicle Accident Indemnification Corporation would ultimately be liable. The Cor-

poration, which is the equivalent of our Fund, moved to set aside service upon the named defendant. The New York Court of Appeals upheld the service, finding that upon a weighing of all interests, it was just that plaintiff be permitted to proceed.

We see no reason to reach a different result under our Fund statute. The Fund argues that it may not be able to determine whether the defendant was insured, and further that, if the defendant were on hand, his cooperation could be compelled under *N. J. S. A.* 39:6–68.. Neither consideration is significant enough to deprive plaintiffs of relief. As to insurance coverage, the records of the Division of Motor Vehicles would ordinarily provide the necessary leads. With respect to a defendant's cooperation, it would be equally unavailable if the defendant disappeared after service of process. We do not believe that the Legislature intended to insulate the Fund on either account.

The Fund insists it is not an authorized agent for service of process, and cites *Last v. Burns,* 108 *N. J. Super.* 525 (Law Div. 1970), which so held. Unlike the insurance carrier, the Fund has no existing contractual relations with the missing motorist. And it is also true that if the Fund is held, it will be required to pursue the defendant as an assignee of plaintiff's judgment against him. *N. J. S. A.* 39:6–77. It may therefore be said that the Fund is not an agent for service of process. But that does not end the matter, for the question remains whether the defendant may otherwise be served. In *Dobkin v. Chapman, supra,* defendant was not served by service on the New York counterpart of the Fund. Rather the existence of the New York fund was deemed a meaningful factor in deciding whether some substituted service would be just under all the circumstances. And so here, the existence of our Fund serves the same role, for the Fund shares the defendant's interest in defending the suit against him, and the satisfaction of the injured party's claim will further the public interest which underlies the creation of the Fund.

Hence we are satisfied that where, as here, it appears from an adequate investigation that the defendant cannot be served by any of the prescribed modes, it is appropriate to order substitute service under R. 4:4–4(i). In the circumstances of these cases, that mode should be ordinary mail to defendant at his last known address. The order should also provide for notice to the Fund, not thereby to achieve service on the defendant, but rather to apprise the Fund of a situation with which it may be concerned.

### III

Accordingly, in *LaGreca v. Hars,* the order is reversed and the matter remanded with directions to authorize service on defendant by service upon the carrier and by ordinary mail addressed to defendant at his last known address in New Jersey.

In *Feuchtbaum v. Constantini,* the order is modified and the matter remanded with directions to authorize service upon defendant by ordinary mail at his last known address in New Jersey. Notice having already been served on the Fund, it need not be repeated.

In *Magahan v. Erspamer,* the order is reversed and the matter remanded with directions to authorize service upon defendant by ordinary mail at his last known address in New Jersey, with further provision for notice to the Fund.

*For modification and remandment*—Chief Justice WEIN-TRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and MOUNTAIN—6.

*Opposed*—None.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and MOUNTAIN—6.

*Opposed*—None.