172 N.J. Super. 451 (1980)
412 A.2d 829
WILLIAM LEON WHITE, PLAINTIFF,
v.
WILLIAM J. AUSTIN, JR., DEFENDANT.
Superior Court of New Jersey, District Court  Cape May County.
February 6, 1980.
Phillip E. Sbar for plaintiff (Riley & DiCamillo, attorneys).
*452 Frank A. Salvati for defendant (Casby, Garrigle & Chierici, attorneys).
STALLER, J.S.C. (temporarily assigned).
This is a motion brought by State Farm Mutual Automobile Insurance Company (hereinafter State Farm) to remove the execution of judgment brought against it pursuant to a default judgment entered against defendant William Austin, Jr., on September 21, 1979. The unique factual situation giving rise to this motion, and to a question of first impression in this jurisdiction, is as follows:
On March 10, 1972 plaintiff William White and defendant, both residents of New Jersey, were involved in an automobile accident which allegedly resulted in damage to plaintiff's automobile in the amount of $725. Wishing to initiate suit to recover that amount, plaintiff filed a complaint and instructed the sergeant-at-arms of the Cape May County District Court to personally serve defendant at his address in Cape May, New Jersey. The sergeant-at-arms attempted such service on April 11, 1973 but was unable to locate defendant. The United States Post Office provided the sergeant-at-arms with a forwarding address in Watsika, Illinois, for use by plaintiff.
Thereafter, unable either to locate defendant in New Jersey or to secure further information about him, plaintiff attempted to serve defendant via the Division of Motor Vehicles at the Illinois address provided by the Post Office. N.J.S.A. 39:7 3. The Division of Motor Vehicles forwarded copies of the summons and complaint to this address by certified mail, but the papers were returned unclaimed on or about September 20, 1973.
Finally, plaintiff obtained an order of this court on October 25, 1973 permitting him to serve defendant by mailing a copy of the summons, complaint and order to State Farm, the company which defendant had named as his insurance carrier for the purpose of registering his automobile in New Jersey. N.J.S.A. 39:6A-3. This manner of serving a resident motorist who *453 becomes unavailable for personal service was approved by the Supreme Court in Feuchtbaum v. Constantini, 59 N.J. 167 (1971). R. 4:4-4(i). State Farm acknowledges having received such process in November of 1973.
It is now evident that defendant's automobile was not insured by State Farm and that defendant represented that he was so insured in order to avoid the insurance requirement of New Jersey law. The policy under which defendant claimed to be covered, No. 1861-451-F12-13, had been issued to one Virgil Wilborn of Gilman, Illinois, the father of defendant's former wife. It pertained to a 1966 Ford sedan owned by Wilborn, and was in force from June 12, 1971 to September 29, 1971, when Wilborn sold that vehicle. As such, it appears not only that neither defendant nor his automobile were insured under the policy in question, but also that the policy was not even in force at the time of the accident.
However, State Farm took no action in response to this substituted service to inform either plaintiff or the court of defendant's false representation. It did not answer the complaint. It virtually ignored the series of letters sent by plaintiff's attorneys during the period of December 19, 1974 to September 20, 1977, and it failed to oppose plaintiff's motion for default judgment of August 24, 1979. In that motion plaintiff requested that execution of the judgment be limited solely to the State Farm policy which defendant had represented to be his. This was requested because plaintiff could not in good conscience submit an affidavit of nonmilitary service regarding defendant. Plaintiff submits uncontroverted proof that notice of said motion was sent to State Farm, as well as to defendant's last known address on August 21, 1979. A copy of the signed order was sent to State Farm on October 3, 1979.
It was at this stage that State Farm finally responded to the court proceedings and, on November 29, 1979, filed the current motion for the removal of the execution of judgment. The now *454 obvious reasons for State Farm's denial of liability are that defendant (1) was not an insured on the policy and (2) the policy had been cancelled prior to the accident. While these would unquestionably have been valid reasons for a finding in an action for declaratory judgment that there was no coverage, they are now being relied upon by State Farm to justify its failure to respond to the substituted service of process, to the subsequent correspondence of the plaintiff and, finally, to plaintiff's motion for default judgment.
Plaintiff claims that State Farm is estopped by its conduct over a period of six years to now assert the defense of noncoverage though it would have been a valid defense if timely made. I agree. State Farm has been inexcusably dilatory in asserting its rights. Liberty Mut. Ins. Co. v. O'Rourke, 122 N.J. Super. 68, 76 (Ch.Div. 1973).
As will be seen, plaintiff has relied upon State Farm's conduct to his detriment, and it would be unjust to allow State Farm to successfully assert the defense of noncoverage at this point when there has been no justifiable excuse propounded for not doing so earlier. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955); Carlsen v. Masters, Mates and Pilots Pension Plan Trust, 80 N.J. 334 (1979).
In analyzing the application of the doctrine of equitable estoppel to achieve this result it should be noted initially that the doctrine may be employed under the proper circumstances to extend the coverage of an insurance policy to cover risks not contemplated thereby. See Harr v. Allstate Ins. Co., 54 N.J. 287 (1969). As will be seen, this is considered to be a proper case for such extension.
The doctrine of equitable estoppel or estoppel in pais has been stated in various fashions, but it is in essence "a doctrine designed to prevent a party's disavowal of previous conduct if such repudiation `would not be responsive to the demands of justice and good conscience'." Carlsen v. Masters, Mates and Pilots Pension Plan Trust, supra at 339. Otherwise stated,

*455 In modern usage, equitable estoppel and estopped in pais are convertible terms, embracing also quasi-estoppel. They embody the doctrine, grounded in equity and justice, that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having a right to do so, has relied thereon. [McSweeney v. Equitable Trust Co., 127 N.J.L. 299, 306 (E. & A. 1941)]
As pointed out in Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra, failure to speak when it is one's duty to do so may estop a party from later asserting rights which he earlier may have. A necessary implication of the Supreme Court's decision in Feuchtbaum v. Constantini, supra, wherein the court permitted substituted service upon the insurance carrier of a New Jersey motorist who cannot be located for service of process, is that a carrier receiving such service has a duty to respond to it in some fashion even where the carrier believes that it does not provide coverage for the absent defendant. This is a duty comparable to, and no more burdensome than an insurer's duty to respond to the claims of its insureds by diligently investigating the facts and promptly notifying the claimant of any intent to disclaim liability and its reason for doing so. Merchants Ind. Corp. v. Eggleston, 37 N.J. 114 (1962); Bowler v. Fidelity & Cas. Co. of N.Y., 53 N.J. 313 (1969).
This duty is nearly identical to the duty of every citizen and business entity to respond to even groundless suits, because the failure to do so exposes one to liability by way of a default judgment. The basis of the Supreme Court's decision in Feuchtbaum to allow substituted service upon the insurance carrier was that there is an identity of interest between the defendant and the insurance carrier, and that it is most often the insurance carrier which actually has funds at risk. 59 N.J. at 178. The practical effect of allowing substituted service on the insurance carrier of an absent defendant is to make the carrier a party to the plaintiff's suit despite the fact that plaintiff has no direct cause of action against the carrier. Thus, while any liability on the carrier's part is strictly derivative, it is *456 the policy of the State of New Jersey, as enunicated in Feuchtbaum, to require the carrier to respond as if the absent defendant, rather than plaintiff, called upon it to defend a lawsuit. If the insurer does nothing to controvert the assumption that it is a real party in interest, its exposure to liability, whether it be called primary or secondary, necessarily continues.
The proper method for State Farm to have disclaimed liability would appear to have been to enter an appearance and move for a stay pending an action for declaratory judgment. See Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., 75 N.J. 117 (1977). At a minimum, an insurer so served must promptly notify the plaintiff of its intent to disclaim liability and of the reasons for said disclaimer. This would permit the plaintiff to pursue other avenues of redress in a timely manner, primary among which would be an application for relief to the Unsatisfied Claim and Judgment Fund Board. N.J.S.A. 39:6 65.
Having established that State Farm had a duty to speak up upon receipt of the substituted service, the questions remain whether plaintiff relied to his detriment upon the position assumed by State Farm, and whether he had a right to do so. McSweeney v. Equitable Trust Co., supra.
It is clear that plaintiff did rely on the position assumed by State Farm to his detriment. Reasonably assuming that if there was clearly no coverage State Farm would not hesitate to say so, plaintiff looked exclusively to State Farm for satisfaction for a period of six years. Thus, he was lulled into foregoing further attempts to locate defendant, as that appeared to be unnecessary. More importantly, however, State Farm's failure to disclaim liability within the period of the statute of limitations of plaintiff's action, N.J.S.A. 2A:14 1, has precluded plaintiff from applying to the Unsatisfied Claim and Judgment Fund Board to compensate him for damages he incurred through the negligence of an uninsured motorist. N.J.S.A. 39:6 64, 39:6 65. Beltvan v. *457 Doe, 145 N.J. Super. 152 (Law Div. 1976), aff'd 155 N.J. Super. 264 (1978).
It is equally clear that plaintiff had a right to base his course of action on the representations impliedly made by State Farm in failing to disclaim liability. As explained above, State Farm had a duty to unequivocally disclaim liability promptly upon receipt of the substituted service which it received in November 1973 if it ever intended to do so. In the absence of such a denial plaintiff had every reason to conclude that the records of the Department of Motor Vehicles, which indicated that defendant was insured by State Farm under policy No. 1861 451 F12 13, were correct.
The proof of insurance offered by a person for the purpose of registering his automobile is a matter of public record to which the public's access is guaranteed by law. N.J.S.A. 47:1A 2, 47:3-16. The obvious purposes in protecting the public's access to such records are to allow citizens to make use of information contained therein in governing their affairs, and to allow them to challenge the contents thereof where appropriate in order to prevent the government and other citizens from making decisions vital to them on the basis of incorrect information. In this case plaintiff properly relied upon the contents of the public record while State Farm failed for six years to challenge its erroneous contents. At least insofar as this plaintiff is concerned, State Farm is now estopped from doing so.
Motion denied.