SILVAS v KELLY

Docket No. 72613. Submitted May 3, 1984, at Grand Rapids.—Decided
August 20, 1984.

Plaintiff, Jobie R. Silvas, was injured in an automobile accident
when the auto she was driving was rear-ended by an auto
driven by defendant, Terry Lynn Kelly. Plaintiff brought an
action in the Eaton Circuit Court against defendant, seeking a
third-party recovery under the no-fault act. Plaintiff claimed
inability to locate and serve defendant in an affidavit and
motion for an order to allow substituted service on defendant
by service upon defendant's no-fault insurer at the time of the
accident. Plaintiff was granted an order and service was made
on the insurer. The insurer moved to quash and advanced the
reasons that the affidavit was inadequate to support the order
and that the insurer had no contact with defendant or her
counsel prior to the filing of the complaint to put it on notice of
the claim. The court, Hudson E. Deming, J., quashed the
service, holding that prior negotiations or dealings with the
insurance company were required to justify the allowance of
substituted service. Plaintiff appealed. *Held:*

Permitting substituted service of process upon a defendant's
automobile liability insurer is proper in an action for damages
resulting from an automobile accident where the plaintiff dem-
onstrated that, after diligent efforts to find the defendant, there
were no other means available to effect service of process. Prior
dealings or negotiations with the insurer is not a prerequisite
to allowing substituted service.

Reversed and remanded with instructions.

1. PROCESS — SUBSTITUTED SERVICE — AUTOMOBILES — INSURANCE.

Permitting substituted service of process upon a defendant's
automobile liability insurer is proper in an action for damages
resulting from an automobile accident where the plaintiff dem-

REFERENCES FOR POINTS IN HEADNOTES
[1] 7A Am Jur 2d, Automobile Insurance § 411.
[1, 2] 62 Am Jur 2d, Process §§ 65, 66.
Validity of substituted service of process upon liability insurer of
unavailable tortfeasor. 17 ALR4th 918.

onstrated that, after diligent efforts to find the defendant, there were no other means available to effect service of process in the manner provided for under other rules (GCR 1963, 105.8).

2. Process — Substituted Service — Due Process.

Substituted service of process in an extraordinary case is not an automatic right; however, the possibility that the means of service chosen would never reach the defendant does not deny the plaintiff a cause of action where, after consideration of the relevant circumstances, the trial court makes an independent evaluation of alternative methods of service consistent with the due-process requirement that they be reasonably calculated to reach the defendant (GCR 1963, 105.8).

*Law Offices of Albert J. Thorburn* (by *Harvey J. Hoffman),* for plaintiff.

*George H. Denfield* and *John W. Cotner,* for defendant.

Before: MacKenzie, P.J., and J. H. Gillis and J. B. Sullivan,* JJ.

Per Curiam. Plaintiff appeals as of right from a circuit court order quashing her service of process by substituted means.

The facts are not in dispute.

On July 12, 1980, plaintiff was injured in an automobile accident in the City of Charlotte when the automobile she was driving was rear-ended by an automobile driven by Terry Lynn Kelly, the defendant. The two automobiles were removed from the scene by wreckers. Plaintiff was taken to the hospital by ambulance. For three years after the accident, plaintiff received first-party no-fault insurance benefits based upon her injuries sustained in the accident. Her health problems continued, however, and on December 29, 1982, plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff commenced this action against defendant, seeking a third-party recovery under the no-fault act.

Shortly after the accident, defendant disappeared; despite apparently extensive investigation, plaintiff was unable to locate and serve defendant. Due to this problem, on February 14, 1983, with less than five months remaining before the expiration of the applicable period of limitations, plaintiff sought and obtained an ex parte order pursuant to GCR 1963, 105.8 to permit her to make substituted service of process upon defendant by serving defendant's former insurance carrier which insured defendant at the time of the accident. Substituted service was effectively made by plaintiff on defendant's liability carrier on or about March 4, 1983.

On April 4, 1983, Auto-Owners, defendant's former liability carrier, filed a motion to quash service of process on defendant's behalf. The grounds raised for quashing service of process were (1) that defendant was no longer insured by Auto-Owners, (2) that Auto-Owners had not had information as to defendant's whereabouts since January of 1981, and (3) that Auto-Owners had never been notified by plaintiff or plaintiff's representatives about the claim until it received service of the summons and complaint.

On June 23, 1983, a hearing was conducted on Auto-Owners' motion. At this hearing, Auto-Owners presented two reasons to quash service of process: first, Auto-Owners never had any contact with plaintiff or her counsel before the complaint herein was filed, *i.e.,* no negotiations had taken place beforehand to "give them notice of the claim"; and, second, that the affidavit of plaintiff's investigator, which was relied upon to obtain the trial court's ex parte order permitting substituted

service, was inadequate and did not state a factual foundation for initially obtaining this order as required by *Krueger v Williams,* 410 Mich 144; 300 NW2d 910 (1981), *app dismissed for want of jurisdiction* 452 US 956; 101 S Ct 3102; 69 L Ed 2d 967 (1981).

In response, plaintiff conceded that, although no negotiations had taken place with Auto-Owners before instituting this action, plaintiff doubted whether such is required before filing an action. Plaintiff also argued that the affidavit used in obtaining the substituted service set forth what had been done in attempting to locate defendant with great particularity. Finally, plaintiff claimed that the *Krueger* case struck a balance between the defendant's right to have an opportunity to be heard and the plaintiff's right to be made whole, and that this balance should be struck in plaintiff's favor. The trial court interpreted *Krueger* to require prior dealings or negotiations with the insurance company to provide plaintiff with at least a "false sense of security" to justify allowing substituted service on the defendant's insurance carrier. Since no prior negotiations had taken place with Auto-Owners in this case, the trial court granted the motion to quash service of process. The trial court did not reach the question of whether the affidavits filed on plaintiff's behalf sufficiently detailed plaintiff's efforts to locate defendant before she obtained permission to substitute service of process upon defendant by other means.

On appeal, plaintiff contends that the circuit court erred by quashing service of process on defendant's liability insurer because no prior negotiations had taken place between plaintiff and defendant's liability insurer. We agree.

By means of an ex parte order, plaintiff obtained permission to serve Auto-Owners in order to commence an action against defendant. This substituted service was permitted under GCR 1963, 105.8:

"The court in which an action has been commenced may, in its discretion, allow service of process to be made upon a defendant in any other manner which is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard, if an order permitting such service is entered before service of process is made upon showing to the court that service of process cannot reasonably be made in the manner provided for under other rules."

We agree with the trial court and the parties that *Krueger* is dispositive, but disagree with the trial court's and Auto-Owners' limited interpretation of *Krueger.*

At the outset we note that this action is against Terry Lynn Kelly, not Auto-Owners. Auto-Owners is merely sought to be deemed an "agent" of Terry Lynn Kelly, the insured, strictly for purposes of service of process because defendant-insured cannot be found upon diligent inquiry. If Auto-Owners is later found somehow to be liable to plaintiff, it will be based upon its former contract with defendant and nothing else.

In *Krueger,* the parties were similarly involved in an automobile accident. Both parties were insured by the same liability carrier. When settlement negotiations with the insurance company failed, plaintiff filed an action against defendant. Defendant, however, as here, could not be found and served with process. Plaintiff then filed a motion for substituted service of process pursuant to GCR 1963, 105.8. The trial court denied plain-

tiff's request and this Court affirmed. The Supreme Court granted leave to appeal, and reversed, finding that substituted service may be made upon an absentee defendant's insurance carrier when diligent efforts are shown to have been made to serve defendant, yet without success. The Court explained that "[w]hile the ability to effect service of process in this manner is a new concept for Michigan, we are not without precedent". 410 Mich 163. The Court then followed the direction established by both New Jersey and New York in *Feuchtbaum v Constantini,* 59 NJ 167; 280 A2d 161 (1971), and *Dobkin v Chapman,* 21 NY2d 490; 289 NYS2d 161; 236 NE2d 451 (1968). In neither *Feuchtbaum* nor *Dobkin* did the element of "prior negotiation" ever serve as a condition precedent to utilizing a substituted means of service of process on the defendants' respective insurance carriers. Neither does this element appear as a manifest requirement in *Krueger.* In fact, the underlying message in all three of these decisions is that "due process cannot be measured by any rigid formula". 410 Mich 163. To adopt the trial court's and Auto-Owners' interpretation of *Krueger* would serve as an application of just such a "rigid formula".

The New York Court of Appeals evaluated four factors before reaching its conclusion to permit substituted service on a defendant's insurance carrier. After weighing "the plaintiff's need, the public interest, the reasonableness of the plaintiff's efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant's interests", the New York court concluded that plaintiff's interests are paramount. *Dobkin, supra,* pp 503-506.

After considering the same factors, the Supreme Court of New Jersey held:

"Upon consideration of all of the interests involved, the balance must be struck in plaintiff's favor. Substituted service should be ordered. We agree that service upon the carrier would be appropriate. By its contract the carrier has the right and the duty to defend any action against the insured. The carrier thus has a representative role, which, though it does not include an express agency to accept service of process, is nonetheless relevant when process cannot otherwise be served upon the insured. Realistically there is more of a chance that defendant will learn of the suit by such service than through available alternatives, for the carrier is likely to have an interest in finding him." *Feuchtbaum, supra,* p 178.

The Michigan Supreme Court agreed with these analyses in *Krueger, supra,* p 164. While it is true that the Supreme Court noted that the insurance carrier "was aware of the possibility that suit would be filed", we do not believe that the carrier's ignorance about such a suit negates the ability to obtain substituted service. Again, the action is not against the insurance carrier but, rather, is against the insured. Therefore, the insurance carrier's knowledge or awareness is irrelevant when it concerns the service of process. So long as the action is pursued within the statutory period of limitations, plaintiff should be permitted to serve the defendant. When a defendant attempts to escape liability by avoiding service of process, other methods should be available, including substituted service of process upon his liability carrier.

After quoting from *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), our Supreme Court made the following observation in *Krueger, supra,* pp 158-159:

"It is important to note that *Mullane* acknowledged

the possibility that the means chosen would never reach the defendant.

" '[I]t has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.' *Mullane, supra,* p 317.

"This language reflects an awareness that there may be situations in which an injured plaintiff will not be denied a cause of action even though a defendant cannot be found. Similarly, the broad scope of GCR 1963, 105.8, offers an injured plaintiff the possibility of fashioning a method of service which will serve to permit an action to proceed. The rule recognizes that substituted service in an extraordinary case is not an automatic right. After consideration of all the relevant circumstances of the individual case, it is the court that must make an independent evaluation regarding available alternative methods of service consistent with the guarantees of due process. As long as the means are 'reasonably calculated' to reach the defendant, the requirement of actual notice is satisfied and service will be sustained."

Although raised by Auto-Owners in its motion to quash service of process, the circuit court did not reach the question of whether the affidavits supporting plaintiff's motion for substituted service were adequate. On remand, the circuit court shall consider this issue.

Reversed and remanded. We do not retain jurisdiction.