KRUEGER v WILLIAMS

RODGERS v DAVIS

Docket Nos. 59743, 61861. Argued January 8, 1980 (Calendar Nos. 2, 3).—Decided February 3, 1981. Appeal dismissed by the Supreme Court of the United States June 22, 1981.

Esther V. Krueger brought an action against Alice J. Williams for damages resulting from an automobile accident. The parties were both insured by the Detroit Automobile Inter-Insurance Exchange (DAIIE) at the time of the accident, but the plaintiff's attempt to settle the claim with the insurer was unsuccessful. The plaintiff was unable to find the defendant, who had apparently moved from Grand Rapids to Arkansas, to serve her personally with process, but four months after the complaint was filed copies of the summons and complaint were sent by registered mail, return receipt requested, to the defendant's last known address in Arkansas. The envelope was returned, unopened, with the notation "Moved—left no address". Copies were also served on the Secretary of State and the DAIIE office in Grand Rapids. The insurer's attorney appeared specially to challenge the jurisdiction of the circuit court because no personal service was made on the defendant. The Kent Circuit Court, Roman J. Snow, J., denied the plaintiff's motion to allow substituted service of process upon the defendant's insurer and dismissed the complaint because service had not been made

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law §§ 827, 853.
   20 Am Jur 2d, Courts § 146.
[2, 3, 5, 11-13, 15] 16A Am Jur 2d, Constitutional Law § 831.
   62 Am Jur 2d, Process § 65 et seq.
[4] 8 Am Jur 2d (Rev), Automobiles and Highway Traffic § 945.
   20 Am Jur 2d, Courts § 146.
[6, 7] 16A Am Jur 2d, Constitutional Law § 829.
   62 Am Jur 2d, Process § 67.
[7] 62 Am Jur 2d, Process § 109 et seq.
[8] 16A Am Jur 2d, Constitutional Law § 827.
   62 Am Jur 2d, Process §§ 66, 109 et seq.
[9, 10] 16A Am Jur 2d, Constitutional Law § 831.
   62 Am Jur 2d, Process §§ 66, 67.
[14, 15] 20 Am Jur 2d, Courts §§ 85, 86.

within 180 days. The Court of Appeals, R. B. Burns, P.J., and M. J. Kelly and S. S. Hughes, JJ., affirmed, and, on rehearing, decided also that substituted service on the insurer in this case would have been unlikely to give the defendant actual notice of the proceedings and an opportunity to be heard (Docket No. 23980). Plaintiff Krueger appeals.

Robert Rodgers and Johnnie Hampton brought an action against the City of Detroit and others for injuries they suffered while they were riding on a Detroit Department of Street Railways bus which was struck by a Detroit police car chasing a Ford Mustang automobile. The complaint was later amended to add as defendants Fanny Mae Davis and Willie Davis, as owners of the Mustang, and Louis Scott and Paul Hines, as the possible drivers of the automobile. The Wayne Circuit Court, Thomas J. Foley, J., granted a motion for substituted service of process on the added defendants by mail and publication in the Detroit Legal News, and a default judgment against them when they failed to appear. The plaintiffs added the Detroit Automobile Inter-Insurance Exchange (DAIIE) as garnishee defendant because it insured defendants Willie Davis and Louis Scott. The Wayne Circuit Court, Theodore R. Bohn, J., granted judgment against the garnishee defendant, deciding that DAIIE showed no prejudice that it might have suffered from any lack of notice of the action against the added defendants. The Court of Appeals, M. J. Kelly, P.J., and T. M. Burns and R. M. Maher, JJ., affirmed in an unpublished per curiam opinion, but vacated the default judgment against Fannie Mae Davis on the ground that the return receipt of registered mail sent to her was not made a part of the record (Docket No. 77-1107). Garnishee defendant DAIIE appeals. In an opinion by Justice Fitzgerald, joined by Justices Williams, Levin, and Moody, the Supreme Court *held:*

1. The inherent limit on the court rules permitting substituted service of process on a defendant who cannot be personally served is the requirement that the means chosen be reasonably expected to give notice of the pendency of the action. Jurisdiction and notice are two separate aspects of one due-process guarantee. To assert jurisdiction sufficient minimum contacts must exist between the forum, the defendant, and the subject matter of the litigation so as not to offend traditional notions of fair play and justice. The equally fundamental notice component has its own distinct requirements: that at a minimum deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the case. The requirement of notice so as to

afford an opportunity to be heard is clearly at the heart of the court rule, which recognizes the mobility of contemporary society and the state's interest in providing recompense for injured plaintiffs. It is meant to allow flexibility where the other methods of service in a given situation are not reasonable, and as long as the means chosen meet the due-process standards, service will be allowed.

2. It is possible that the means chosen would never reach the defendant, but that does not deny the plaintiff a cause of action. The rule offers an injured plaintiff the possibility of fashioning a method of service which will permit an action to proceed. Substituted service in an extraordinary case is not an automatic right; but, after consideration of the relevant circumstances, the court must make an independent evaluation of alternative methods of service consistent with the guarantees of due process. As long as the means are reasonably calculated to reach the defendant, the requirement of actual notice is satisfied and service will be sustained.

3. Jurisdiction in *Krueger* was proper in Michigan courts and does not offend the due-process rights of defendant Williams because she had sufficient contacts with Michigan to make it the proper forum. If sufficient contacts exist between the defendant and the forum, jurisdiction may be maintained. The standard is one of reasonableness under all of the circumstances. There is nothing unfair about allowing a plaintiff to sue a defendant who was a resident of Michigan when the accident occurred in Michigan but who subsequently moved out of the state. The plaintiff attempted to comply with the requirements of the non-resident motorist statute, but because the envelope was returned unopened this type of service was not available. She made diligent efforts to find the defendant, and filed affidavits of two investigators and of her attorney concerning their efforts. The plaintiff has demonstrated that there were no other means available to effect service of process except by appealing to the court, in its discretion, to allow her to serve the defendant's liability insurer. The need to use constructive service in this case is obvious. Our mobile society affords elusive defendants the potential to escape liability by avoiding service of process. The insurance company, while undertaking negotiations to settle this controversy, was aware of the possibility that a suit would be filed. Constructive service by service on the insurer is allowed under these circumstances.

4. Due process does not require that actual notice be given in every case but the method of imparting notice must be reasonably calculated under all the circumstances to afford notice to

the defendants. When circumstances make it doubtful that actual notice will be effected, the method used may not be substantially less likely to afford notice than other customary substitutes.

5. Service of process by publication is permissible under the Due Process Clause in certain limited situations. The notice required will vary, but the Supreme Court of the United States has not hesitated to disapprove the use of publication where alternative means better calculated to impart actual notice are reasonably available and where resort to those means is not overly burdensome. Similarly, the Supreme Court of Michigan has held unconstitutional statutes which only require service by publication where the identity and whereabouts of the parties are readily ascertainable. The court rule concerning substituted service of process was designed to give trial judges freedom to fashion methods of giving notice which are consistent with the requirements of due process, where a sufficient showing has been made to justify relieving a party from compliance with methods of service specifically prescribed by court rule or statute. A truly diligent search for an absent defendant is absolutely necessary to support the order for substituted service.

6. The plaintiffs' verified motion in *Rodgers* is insufficient because it fails to show with particularity that service of process could not reasonably have been made according to the methods prescribed in other court rules or that no better means of giving notice were available than publication. The plaintiffs assert that personal service on the defendants "is not possible", that the last known address of one defendant and the whereabouts of the others are "unknown", and that the plaintiffs have been unable to locate them despite "diligent attempts" to do so. The pleadings contain insufficient factual assertions about what attempts were made to find and serve the defendants under other rules, and offer no explanation as to why other means better calculated to impart actual notice than publication were not reasonably available. It may be that the plaintiffs have done everything necessary to constitute a good-faith effort, but the affidavit should state the facts so that the trial judge and appellate bench can make an informed and reasonable determination. The efforts made to locate and notify the defendant should be evaluated, at least in part, according to the type of substituted service being proposed by the party seeking relief.

7. In the *Rodgers* case, the plaintiffs requested substituted service by publication and mailing to one defendant's last

known address. Under this rule, the use of publication as a device for giving notice should be limited to discrete circumstances where a strong specific factual showing is made that notice cannot reasonably be effectuated in the manner provided under other rules and that means which are better calculated to give notice than publication are not readily available or feasible. The *Rodgers* case is remanded to the trial court to give the plaintiffs the opportunity to demonstrate that they had factually satisfied the requirements of the court rule before substituted service was ordered.

The decisions of the Court of Appeals are reversed and the cases are remanded for further proceedings.

Justice Ryan, joined by Chief Justice Coleman and Justice Kavanagh, dissented from the opinion of the Court in *Krueger* because he was not persuaded that the trial court abused its discretion in refusing to permit the particular substituted service requested by the plaintiff, and concurred with the opinion of the Court in *Rodgers.*

1. While minimum due process standards might be satisfied in a given case by service of process upon a liability insurance carrier, under the court rule it is for the trial judge to determine case by case, in the exercise of his discretion, whether a specifically proposed "other manner" of service "is reasonably calculated to give * * * actual notice". Here, the trial judge was informed that the insurance company had received no premium payments and had no contact with the insured for almost three years. He also knew that the plaintiff's letter to the defendant's last known address had been returned unopened and that the best efforts of two investigators had failed to locate the defendant. Certainly on those facts the trial judge committed no abuse of discretion in concluding that service upon the insurance carrier was not reasonably calculated to give the defendant actual notice of the lawsuit.

2. By the adoption of the court rule, the Court determined that the minimum due process requirement of notice of the pendency of a civil lawsuit would not be the standard in Michigan. Rather, the right to obtain service of process in a manner other than that provided for under other rules was made dependent upon the judgment of the trial court in the exercise of its discretion that such other manner is reasonably calculated in a given case to give actual notice of the pendency of the proceedings. The trial judge in this case did not abuse his discretion in declining to approve the service upon the liability insurance carrier, given the facts with which he was presented.

75 Mich App 1; 245 NW2d 615 (1977) reversed.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — JURISDICTION — DUE PROCESS — NOTICE.

To assert jurisdiction sufficient minimum contacts must exist between the forum, the defendant, and the subject matter of the litigation so as not to offend traditional notions of fair play and justice; the Due Process Clause also requires notice of the proceeding so as to afford an opportunity to be heard (US Const, Am XIV; Const 1963, art 1, § 17).

2. PROCESS — SUBSTITUTED SERVICE — CONSTITUTIONAL LAW — DUE PROCESS.

The court rule which permits the trial court, in its discretion, to allow substituted service of process is meant to allow flexibility where the other methods of service given in the court rules are not reasonable; as long as the means chosen meet the due-process requirement that they be reasonably calculated to reach the defendant, service will be allowed (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.8).

3. PROCESS — SUBSTITUTED SERVICE — CONSTITUTIONAL LAW — DUE PROCESS.

Substituted service of process in an extraordinary case is not an automatic right; however, the possibility that the means of service chosen would never reach the defendant does not deny the plaintiff a cause of action where, after consideration of the relevant circumstances, the trial court makes an independent evaluation of alternative methods of service consistent with the due-process requirement that they be reasonably calculated to reach the defendant (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.8).

4. CONSTITUTIONAL LAW — JURISDICTION — DUE PROCESS — MINIMUM CONTACTS — NONRESIDENT DEFENDANT.

There is nothing unfair about allowing a plaintiff to sue in Michigan a defendant who was a resident of the jurisdiction at the time the cause of action arose out of an automobile accident which occurred in Michigan; the defendant had sufficient contacts with Michigan to make its courts a proper forum under the Due Process Clause even though the defendant subsequently moved out of state and was never personally served with process (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.9).

5. PROCESS — SUBSTITUTED SERVICE — AUTOMOBILES — INSURANCE — NONRESIDENT DEFENDANT.

Permitting substituted service of process upon a defendant's

automobile liability insurer is proper in an action for damages resulting from an automobile accident where the plaintiff demonstrated that after diligent efforts to find the defendant, who had apparently moved out of the state after the accident, there were no other means available to effect service of process, and the insurer, while undertaking negotiations to settle the controversy, had been aware of the possibility that a suit would be filed (GCR 1963, 105.8).

6. Process — Substituted Service — Constitutional Law — Due Process — Notice.

The Due Process Clause does not require that a defendant be given actual notice of the pendency of an action in every case, but the method of imparting notice must be reasonably calculated under all the circumstances to afford notice; when circumstances make it doubtful that actual notice will be effected, the method used may not be substantially less likely to afford notice than other customary substitutes (US Const, Am XIV; Const 1963, art 1, § 17).

7. Process — Substituted Service — Publication — Constitutional Law — Due Process — Notice.

The Supreme Court of the United States has not hesitated to disapprove, as being inconsistent with due process, the use of publication to give notice of a pending action to interested parties where alternative means better calculated to impart actual notice are reasonably available and where resort to those means is not overly burdensome (US Const, Am XIV).

8. Process — Substituted Service — Publication — Constitutional Law — Due Process — Notice.

Statutory schemes which only require service of process by publication violate the requirements of due process where the identity and whereabouts of the parties are readily ascertainable (US Const, Am XIV; Const 1963, art 1, § 17).

9. Process — Substituted Service — Constitutional Law — Due Process — Notice.

The court rule concerning substituted service of process on a defendant who cannot be personally served was designed to give trial judges freedom to fashion methods of giving notice which are consistent with the requirements of due process, because the kind of notice required by the Due Process Clause, of necessity, varies with the circumstances of each case (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.8).

10. PROCESS — SUBSTITUTED SERVICE — CONSTITUTIONAL LAW — DUE PROCESS.

A truly diligent search for an absent defendant is absolutely necessary to support an order for substituted service of process; the efforts made to locate and notify the defendant should be evaluated, at least in part, according to the type of substituted service being proposed by the party seeking relief (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.8).

11. PROCESS — SUBSTITUTED SERVICE — CONSTITUTIONAL LAW — DUE PROCESS.

Assertions by the plaintiffs in an action for damages resulting from an accident between a city bus and a police car chasing the defendant's automobile that personal service on the defendants "is not possible", that the last known address of one defendant and the whereabouts of the others are "unknown", and that the plaintiffs have been unable to locate the defendants despite "diligent attempts" to do so contain insufficient factual assertions about what attempts were made to find and serve the defendants, and offer no explanation as to why other means of service better calculated to impart actual notice than publication were not reasonably available, to permit substituted service on them by mail and publication (US Const, Am XIV; Const 1963, art 1, § 17; GCR 1963, 105.8).

12. PROCESS — SUBSTITUTED SERVICE — PUBLICATION — AFFIDAVITS.

A plaintiff requesting an order for substituted service of process upon a defendant by mail and publication has the burden of factually and specifically showing what was done to find and serve the defendant personally so that the trial judge and appellate bench may make an informed and reasonable determination whether the requirements of the court rules have been satisfied (GCR 1963, 105.8).

13. PROCESS — SUBSTITUTED SERVICE — PUBLICATION — NOTICE.

The use of substituted service of process by publication and mail to a defendant's last known address as a device for giving notice of the pendency of an action against the defendant should be limited to discrete circumstances where a strong specific factual showing is made that notice cannot reasonably be effectuated in the manner provided under other rules and that means which are better calculated to give notice than publication are not readily available or feasible (GCR 1963, 105.8).

Dissenting Opinion by Ryan, J.

See headnotes 6-13.

14. PROCESS — SUBSTITUTED SERVICE — DISCRETION — COURT RULES.

*Under the court rules, it is for the trial judge to determine case by case, in the exercise of his discretion, whether a specifically proposed substituted service of process upon a nonresident defendant's automobile liability insurer is reasonably calculated to give the defendant actual notice, even though the minimum standards of due process might be satisfied by service of process upon the liability insurer (GCR 1963, 105.8).*

15. PROCESS — SUBSTITUTED SERVICE — AUTOMOBILES — INSURANCE
— NONRESIDENT DEFENDANT.

*Concluding that notice to the insurer would not be reasonably calculated to give a nonresident defendant actual notice and consequent refusal to allow substituted service of process upon the defendant's automobile liability insurer was not an abuse of discretion in an action for damages resulting from an automobile accident where the insurance premiums were not paid and the last contact the insurer had with its insured was almost three years before the plaintiff filed suit (GCR 1963, 105.8).*

*Church, Wyble, Kritselis, Anderson & Robinson, P.C. (by Thomas H. Hay),* for plaintiff Krueger.

*Gittleman & Paskel, P.C.,* for plaintiffs Rodgers and Hampton.

*Allaben, Massie, Vander Weyden & Timmer (by Timothy I. Miner)* for defendant Williams.

*Dickinson, Pike, Mourad, Brandt & Hanlon (by David R. Tuffley; Gromek, Bendure & Thomas,* by *Carl L. Gromek* and *James G. Gross,* of counsel) for garnishee defendant Detroit Automobile Inter-Insurance Exchange.

FITZGERALD, J. We are asked to construe GCR 1963, 105.8. In the *Krueger* case, we must decide whether the rule will permit substituted service of process upon a defendant's liability insurer. In the *Rodgers* case, we must determine if this rule au-

thorizes service of process by publication to obtain personal jurisdiction over a defendant.

## I

In *Krueger v Williams,* plaintiff and defendant were involved in an automobile accident. At the time, both parties were insured by the Detroit Automobile Inter-Insurance Exchange (hereafter DAIIE). Plaintiff attempted to negotiate a settlement with DAIIE. When resolution became impossible, approximately six months before the statute of limitations was to run, plaintiff filed suit against Alice Williams, who at the time of the accident was apparently a resident of Grand Rapids.

After the complaint was filed, plaintiff tried to locate the defendant. An investigator was hired but all attempts to find Alice Williams were unsuccessful.

Four months after the complaint was filed, a copy of the summons and complaint were sent by registered mail, return receipt requested, to the defendant's last known address in Arkansas. These were returned unopened with the notation "Moved —left no address." Copies were also served upon the Secretary of State, Non-Resident Section, and defendant's liability insurance carrier. The summons, complaint, affidavit and proof of service were mailed to the DAIIE office in Grand Rapids. The attorney for the insurance company entered a special appearance, challenging the circuit court's jurisdiction since no personal service was made on Alice Williams.

Plaintiff then filed a motion pursuant to GCR 1963, 105.8, to allow substituted service upon defendant by service of process on the liability carrier. Following hearings on the motion, this form

of substituted service was denied. The circuit court also granted defendant's application for a writ of mandamus dismissing the cause of action. The Court of Appeals agreed that the method of substituted service was inadequate. We granted leave to appeal, directing the parties to address the issue of whether the trial court erred by refusing to allow plaintiff substituted service of process upon the defendant's liability insurer.

In *Rodgers*, plaintiffs were passengers on a city bus when a police car chasing a vehicle went through a stop sign and collided with the bus. The plaintiffs sustained injuries and filed a complaint naming various officials as defendants and alleging that the driver and/or owner of the car was unknown. After the plaintiffs learned that the owners of the automobile were Fanny Mae and Willie Davis, and that the driver was either Louis Scott or Paul Hines, a motion was made and granted to amend the complaint and add these four persons as defendants. Shortly thereafter, plaintiffs filed a motion for substituted service by mail and publication stating that following diligent attempts by their office staff and outside investigative agencies, they had been unable to locate the added defendants.[1] This motion was granted.[2] The added defendants failed to appear and a default judgment was entered against Fanny Mae Davis, Willie Davis, Louis Scott and Paul Hines.

---

[1] Fanny Mae Davis' last known address was in Clarksville, Tennessee. Louis Scott was on parole at the time to the Michigan State Department of Corrections; however, he hadn't reported to his parole officer for a substantial period of time, and his parole officer did not know his current whereabouts. Plaintiffs had no knowledge of the whereabouts of defendants Hines and Willie Davis.

[2] Letters were sent by registered mail to Fanny Mae Davis' last known address. A notice was published in the *Detroit Legal News* once a week for five weeks naming all defendants involved in this cause of action.

Plaintiffs then filed an affidavit for garnishment against the Detroit Automobile Inter-Insurance Exchange which had a policy of insurance in effect on the named insured Willie Davis and on Louis Scott. DAIIE moved to vacate the default and dismiss the garnishment on the grounds that personal jurisdiction was never obtained over the principal added defendants and that the order for substituted service was improperly granted because it was not calculated to give actual notice of the proceedings. This motion was denied.

The trial of garnishee liability resulted in judgment for the plaintiffs. The court found that the insurance company had adequate notice of the case well before the default judgment was taken and had failed to sustain the burden of proving that it was prejudiced. The Court of Appeals affirmed in an unpublished per curiam opinion.[3] Rehearing in the Court of Appeals was denied. We granted leave to appeal, directing the parties to include among the issues to be briefed whether the trial court erred in finding that GCR 1963, 105.8, authorizes service of process by publication to obtain personal jurisdiction as a means reasonably calculated to give actual notice of the proceedings and an opportunity to be heard and whether the

[3] The Court of Appeals agreed that DAIIE had adequate notice of the pending action sufficiently before the default judgment was entered. In regard to the substituted service by mail and publication, the court noted that the evidence indicated that the added defendants had purposefully concealed their whereabouts. In such a situation it would be unfair to allow the garnishee to escape liability when the judgments are within the policy limits and the garnishee is the truly interested party. Thus, service under GCR 1963, 105.8, was appropriate. The court held, however, that service on Fanny Mae Davis was not proper since there was no evidence that a return receipt of the registered mail was made a part of the record as required by statute. MCL 257.403; MSA 9.2103. Thus, judgment against Fanny Mae Davis was vacated. The default judgment against Willie Davis, Louis Scott and Paul Hines was affirmed, as was the judgment of garnishment against DAIIE.

trial court, when considering the prerequisites for substituted service when personal jurisdiction is required, erred by not requiring an appropriate affidavit in support to show diligent inquiry.

## II

GCR 1963, 105.8 reads:

"Discretion of the Court. The court in which an action has been commenced may, in its discretion, allow service of process to be made upon a defendant in any other manner which is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard, if an order permitting such service is entered before service of process is made upon showing to the court that service of process cannot reasonably be made in the manner provided for under other rules."

Service of process is defined as:

"[T]he giving of such actual or constructive notice of a suit or other legal proceeding to defendant as makes him a party thereto, and compels him to appear or suffer judgment by default; and 'service' in this connection means the execution of process or the particular act of the officer by which the copy of the citation was communicated." 72 CJS, Process, § 25, pp 1022-1023.

Service may be made personally on a defendant or, if this is not possible, constructive service is permitted. Our court rules provide various methods to achieve substituted service. The Legislature has recognized that these rules must be drawn so as to be applicable to a wide variety of facts. The inherent limit is the requirement that the means chosen be reasonably expected to give notice of the pendency of the action. GCR 1963, 105.8, recognizes this by allowing service in any manner as

long as it can be shown to the court that other, more traditional, modes are unavailable.

The committee notes to rule 105.8 read:

"This provision is included to give the court discretion to allow service of process to be made in a manner which satisfies the language of *Milliken v Meyer,* 311 US 457; 61 S Ct 339; 85 L Ed 278; 132 ALR 1357 [1940], rehearing denied 312 US 712; 61 S Ct 548; 85 L Ed 1143 [1941], *i.e.,* a method 'reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard.'

"The state of the law seldom remains static for very long, and particularly in the field of service of process, change has been occurring rapidly. * * * It is thus believed desirable to confer discretion upon the courts to permit utilization of new methods of service of process which may be developed, and to permit courts themselves to propose and effectuate other methods of service of process, so long as the methods meet the requirements of the due process clause of the 14th Amendment to the United States Constitution, and the equivalent clause in the Michigan constitution." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 111-112.

Traditionally, service of process was integrally linked with jurisdiction and the power of a court to render a binding decision. See *Pennoyer v Neff,* 95 US 714; 24 L Ed 565 (1877). This "power concept" has been substantially altered by the United States Supreme Court decision in *Shaffer v Heitner,* 433 US 186; 97 S Ct 2569; 53 L Ed 2d 683 (1977). Jurisdiction and notice may now be viewed as two separate aspects of one due-process guarantee. *Shaffer* addressed itself to the jurisdiction question, reaffirming the basic requirements set out in *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945). To assert jurisdiction sufficient minimum contacts must ex-

ist between the forum, the defendant and the subject matter of the litigation so as not to offend traditional notions of fair play and justice.

The notice component, equally fundamental to any due process analysis, but with its own distinct requirements, is guided by the reasoning set forth in *Mullane v Central Hanover Bank & Trust Co*, 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950). See also Lacy, *Personal Jurisdiction and Service of Summons After Shaffer v Heitner*, 57 Oregon L Rev 505, 506-511 (1978).

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane, supra,* p 313.

The requirement of notice so as to afford an opportunity to be heard is clearly the heart of GCR 105.8. The rule adopts a liberal approach to service of process which recognizes the mobility of contemporary society and the state's interest in providing recompense for injured plaintiffs. The court is given the discretion to implement any method for service of process beyond those set out in other rules when it is shown that in the context of a given situation other methods are not reasonable. This omnibus rule is meant to allow flexibility, and as long as the means chosen meet *Mullane's* standards, service will be allowed. See *Conrad v Ward,* 33 Mich App 687, 690; 190 NW2d 361 (1971); *Felix v Felix,* 47 Mich App 744; 209 NW2d 871 (1973).

It is important to note that *Mullane* acknowl-

edged the possibility that the means chosen would never reach the defendant.

"[I]t has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane, supra,* p 317.

This language reflects an awareness that there may be situations in which an injured plaintiff will not be denied a cause of action even though a defendant cannot be found. Similarly, the broad scope of GCR 1963, 105.8, offers an injured plaintiff the possibility of fashioning a method of service which will serve to permit an action to proceed. The rule recognizes that substituted service in an extraordinary case is not an automatic right. After consideration of all the relevant circumstances of the individual case, it is the court that must make an independent evaluation regarding available alternative methods of service consistent with the guarantees of due process. As long as the means are "reasonably calculated" to reach the defendant, the requirement of actual notice is satisfied and service will be sustained. We are reminded of the frequently quoted words of Justice Holmes, "Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances, no doubt justice will be done." *Blinn v Nelson,* 222 US 1, 7; 32 S Ct 1; 56 L Ed 65 (1911).

## III

The arguments in the *Krueger* case involve two

issues: 1) will service of process upon a defendant's liability insurer comport with the guarantees of due process of law and enable our courts to exercise jurisdiction, and 2) did the lower courts err by not allowing plaintiff to use some method of substituted service of process to serve an absent defendant.

We conclude that jurisdiction was proper in Michigan courts and that litigation here does not offend the due process rights of defendants. Defendant Williams argues:

> "The landmark case of *Pennoyer v Neff [supra]* declared that, to have a determination of personal liability of the defendant, he must be brought within the jurisdiction of the court by service of process within the state, or by his voluntary appearance. * * * In other words, while the court might have jurisdiction over the subject matter, it would not have jurisdiction over the defendant unless he was personally served with process within the state."

We rely again on the United States Supreme Court's recent decision of *Shaffer v Heitner,* in which the Court said, *"Pennoyer* itself recognized that its rigid categories * * * could not accommodate some necessary litigation." *Shaffer, supra,* p 201. Cases involving automobile accidents comprised one such category.

> "The advent of automobiles, with the concomitant increase in the incidence of individuals causing injury in States where they were not subject to *in personam* actions under *Pennoyer,* required further moderation of the territorial limits on jurisdictional power. This modification, like the accommodation to the realities of interstate corporate activities, was accomplished by use of a legal fiction that left the conceptual structure established in *Pennoyer* theoretically unaltered." *Shaffer, supra,* p 202.

Thus, under *Pennoyer,* service could be made on an in-state resident as the basis of in personam jurisdiction and, by using the legal fiction that the out-of-state motorist appointed a state official to act as his agent and accept process, in personam jurisdiction was also possible for the non-resident driver.

*International Shoe Co v Washington, supra,* acknowledged this use of legal fictions and announced that the ancient concept of in personam jurisdiction based on the court's power over the defendant was no longer the proper focus of inquiry. Rather, courts were to evaluate the contacts that existed between the defendant and the forum and if sufficient contacts were shown to exist, jurisdiction could be maintained. The standard to be used was one of reasonableness under all of the circumstances; no mechanical formulas could determine whether or not due process was satisfied. The *Shaffer* Court said, "Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction." *Shaffer, supra,* p 204.

Our courts have utilized this minimum contact approach. See *Parish v Mertes,* 84 Mich App 336; 269 NW2d 591 (1978); *Cole v Doe,* 77 Mich App 138; 258 NW2d 165 (1977). The language of our court rules reflects these concepts. GCR 1963, 105.9, Personal Jurisdiction, speaks of the contacts, ties and relations between the defendant and the state as the tests to determine whether our courts may assert personal jurisdiction. In *Schneider v Linkfield,* 40 Mich App 131; 198 NW2d 834 (1972), *aff'd* 389 Mich 608; 209 NW2d

225 (1973), the Court of Appeals, addressing the jurisdiction issue and not the validity of service, said, "We see nothing unfair about allowing a plaintiff to sue in Michigan a defendant who was a resident of the jurisdiction at the time the cause of action arose." In *Schneider,* an automobile accident occurred in Michigan. The defendants were Michigan residents at the time of the accident but had subsequently moved out of state.

Recent United States Supreme Court decisions have questioned the validity of the *Pennoyer* type of reasoning in favor of the dual aspect analysis we have explored in Part II. We conclude that Alice Williams did have sufficient contacts with Michigan to make our courts a proper forum for litigation.

In addressing the issue of substituted service of process, we conclude that the lower courts did err by not allowing, consistent with the provisions of GCR 1963, 105.8, some form of substituted service of process.

Some additional facts are pertinent. On the date of the accident, both parties were insured by DAIIE. Alice Williams was an assigned risk. Thus, though DAIIE did not sell the policy to Mrs. Williams, and while the actual notice of the accident was forwarded by the "Producer of Record" (the producing agent who sold the policy to Alice Williams), DAIIE did have an obligation to the defendant. The parties do state that at one point, albeit early in the history of this case, the defendant did write a letter to the insurance company. Also, plaintiff did attempt to negotiate this claim with a representative of DAIIE. Suit was filed only after these negotiations failed.

Plaintiff attempted service of process by compliance with the non-resident motorist statute, MCL

257.403; MSA 9.2103. Because the letter was returned unopened, this type of service was unavailable. See *Tomkiw v Sauceda,* 374 Mich 381; 132 NW2d 125 (1965).

Plaintiff made diligent efforts to locate the defendant. An investigator was hired and various locations checked. Affidavits of two investigators as well as plaintiff's attorney were filed reflecting these efforts. Plaintiff has demonstrated that there were no other means available to her to effect service of process except by appealing to the court, in its discretion, to allow her to serve the defendant's liability insurer.

While the ability to effect service of process in this manner is a new concept for Michigan, we are not without precedent. A unanimous opinion of the highest court of New Jersey has held that consistent with the requirements of due process, service of process on a motorist, insured at the time of the accident but missing at the time of suit, may be made by service on the defendant's liability insurance carrier and notice to the defendant's last known address. *Feuchtbaum v Constantini,* 59 NJ 167; 280 A2d 161 (1971).

In *Dobkin v Chapman,* 21 NY2d 490; 289 NYS2d 161; 236 NE2d 451 (1968), the New York Court ruled that following an automobile accident when the whereabouts of the defendant is unknown, alternative methods of service of process may be used, including service by ordinary mail or service by mail and service on the insurance carrier. After noting that due process cannot be measured by any rigid formula, the New York Court evaluated four factors before reaching its conclusion. Weighing "the plaintiff's need, the public interest, the reasonableness of the plaintiff's efforts under all the circumstances to inform the defendant, and

the availability of other safeguards for the defendant's interest", the Court concluded that the interests of the plaintiffs are paramount.

After considering the same factors, the New Jersey Court wrote:

"Upon a consideration of all of the interests involved, the balance must be struck in plaintiff's favor. Substituted service should be ordered. We agree that service upon the carrier would be appropriate. By its contract the carrier has the right and the duty to defend any action against the insured. The carrier thus has a representative role, which, though it does not include an express agency to accept service of process, is nonetheless relevant when process cannot otherwise be served upon the insured. Realistically there is more of a chance that defendant will learn of the suit by such service than through available alternatives, for the carrier is likely to have an interest in finding him." *Feuchtbaum, supra,* p 178.

We agree with these analyses. Plaintiff has made diligent attempts to serve defendant. Plaintiff's need to utilize constructive service in this case is obvious. Our mobile society affords elusive defendants the potential to escape liability by avoiding service of process. The insurance company, while undertaking negotiations to settle this controversy, was aware of the possibility that a suit would be filed. We would allow constructive service under these circumstances.

In *Rodgers,* the second case before us, appellant DAIIE contests both the type of service which was allowed and the manner in which the substituted service was granted. It argues that to premise personal jurisdiction on service of process by publication alone is violative of the constitutional guarantee of a due-process right to notice. Appellant also contends that where personal jurisdiction is

necessary, GCR 1963, 105.8, requires an appropriate affidavit of facts showing the diligent inquiry made by plaintiffs to locate defendants.

The method of imparting notice sufficient to pass constitutional muster was discussed by the United States Supreme Court in *Mullane:*

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action* and afford them an opportunity to present their objections.

                    *    *    *

"The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, *or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.*" (Emphasis added.) (Citations omitted.) *Mullane, supra,* 314-315.

It is evident that due process does not require that actual notice be given in every case. Due process requirements are satisfied if the method of imparting notice is reasonably calculated under all the circumstances to afford notice. When circumstances make it doubtful that actual notice will be effected, the method used may not be substantially less likely to afford notice than other customary substitutes.

Service of process by publication is generally regarded as the method least likely to impart actual notice. However, publication notice is permissible under the Due Process Clause in certain

limited situations. As we have quoted, the *Mullane*
Court recognized that if, for example, the specific
whereabouts of a person is unknown, service of
process by publication may be the most practicable
and adequate method of service available.

Notice must be reasonably calculated to inform
interested parties that an action against them is
pending, but there is no rigid formula to deter-
mine when personal service is required or when
constructive service may be utilized. The kind of
notice required will, of necessity, vary with the
circumstances of each case. See *Walker v City of
Hutchinson,* 352 US 112; 77 S Ct 200; 1 L Ed 2d
178 (1956).

In a number of cases subsequent to *Mullane,* the
Supreme Court was confronted with the issue of
whether service of process by publication consti-
tuted fair notice to a defendant consistent with
due process. It is significant that in every instance
where alternate means of giving notice were avail-
able which were better calculated to give actual
notice, the Court held service of process by publi-
cation constitutionally deficient.[4]

---

[4] See, *e.g., City of New York v New York, N H & H R Co,* 344 US
293, 296; 73 S Ct 299; 97 L Ed 333 (1953), which involved a railroad
reorganization proceeding where publication notice to a creditor of
the time for filing claims was held insufficient. In *Walker v City of
Hutchinson,* 352 US 112; 77 S Ct 200; 1 L Ed 2d 178 (1956), publica-
tion notice to a landowner of condemnation proceedings was deemed
constitutionally deficient where the landowner's name was known to
the city and the city failed to present any "compelling or even
persuasive reasons why * * * direct notice * * * [could not] be
given". *Id.,* 116.

Similarly, in *Schroeder v City of New York,* 371 US 208; 83 S Ct
279; 9 L Ed 2d 255 (1962), publication notice to a landowner whose
property rights were affected by diversion of a river was held insuffi-
cient. The Court noted that the landowner's name and address were
ascertainable from deed records and tax rolls and concluded:

"The general rule that emerges from the *Mullane* case is that
notice by publication is not enough with respect to a person whose
name and address are known or very easily ascertainable and whose
legally protected interests are directly affected by the proceedings in
question." *Schroeder,* 212-213.

The *Hutchinson* Court rejected service of process by publication as an adequate method of imparting notice in that case, stating that *"if feasible,* notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests". (Emphasis added.) *Id.,* 115. Thus, although the United States Supreme Court has not set forth a rigid test as to what showing is required before publication notice is deemed sufficient, the Court has not hesitated to disapprove the use of publication notice where alternative means better calculated to impart actual notice are reasonably available and where resort to these alternative means is not overly burdensome.

Similarly, our Court has held unconstitutional statutory schemes which authorize service by publication as the only required means of imparting notice especially where the identity and whereabouts of parties are readily ascertainable. See *Dow v Michigan,* 396 Mich 192; 240 NW2d 450 (1976); *Ridenour v Bay County,* 366 Mich 225; 114 NW2d 172 (1962).

GCR 1963, 105.8 was designed to give trial judges freedom to fashion methods of giving notice consistent with due process, where a sufficient showing has been made to justify relieving a party from compliance with methods of service specifically prescribed by court rule or statute. A party

---

In other cases concerning the adequacy of notice, the Court has stressed that notice will not be considered reasonable if better means of actually informing a party are available. Thus, in *Covey v Town of Somers,* 351 US 141; 76 S Ct 724; 100 L Ed 1021 (1956), the Court held that mailed notice in a foreclosure proceeding was insufficient where the city knew that the party receiving the notice was incompetent and therefore incapable of understanding the meaning of the notice. Also, in *Robinson v Hanrahan,* 409 US 38; 93 S Ct 30; 34 L Ed 2d 47 (1972), notice was held insufficient where notice was mailed to defendant's home address and the state knew that defendant was no longer at that address but was incarcerated.

seeking such relief must show to the court's satisfaction that the proposed method of service "is reasonably calculated to give him [defendant] actual notice of the proceedings" and that "service of process cannot reasonably be made in the manner provided for under other rules". GCR 1963, 105.8.

A truly diligent search for an absentee defendant is absolutely necessary to supply a fair foundation for and legitimacy to the ordering of substituted service. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane, supra,* 315.

The verified motion for substituted service presented on behalf of plaintiffs in *Rodgers* is insufficient. It fails to show with particularity either that service of process could not reasonably have been made according to prescribed methods or that no better alternative means of giving notice were available than publication.

The only evidence in the record of plaintiffs' efforts to personally serve defendants appears in a conclusory statement contained in plaintiffs' motion for substituted service supported by a general affidavit by one of their attorneys that the motion's allegations are "true to the best of his knowledge, except those matters therein stated to be on information and belief, and as to those matters he believes the same to be true". In short, there is no direct sworn testimony.[5]

---

[5] Such testimony as there is is contained in the following three paragraphs:

"1. Plaintiffs petition this honorable court to serve the defendants, Fanny Mae Davis, Willie Davis, Louis Scott and Paul Hines by substituted service to their last known addresses as may be reasonably determined by plaintiffs for the reason that plaintiffs have sought to serve defendants, Fanny Mae Davis, Louis Scott, Willie Davis and Paul Hines personally, but same is not possible.

"2. That plaintiffs verily believe that Fanny Mae Davis' last known address has been 705 Dixon Street, Clarksville, Tennessee; and, defendant, Louis Scott is presently on parole to the Michigan State

The motion first asserts that personal service on defendants "is not possible". It then states the last known address of one defendant and that the whereabouts of the other defendants are "unknown". The motion further alleges that despite "diligent attempts" by office staff and investigative agencies, plaintiffs have been unable to locate defendants. In short, the pleadings contain insufficient factual assertions as to what diligent attempts were undertaken to find and serve defendants under other rules. Further, the pleadings offer no explanation as to why other means better calculated to impart actual notice than publication were not reasonably available.

While it may very well be that the unnamed members of the office staff and the anonymous outside investigative agencies did everything necessary to constitute an effective good-faith effort under GCR 1963, 105.8, from the record before us we just do not know. As stated in *Thompson v Shiawassee Circuit Judge,* 54 Mich 236, 237; 19 NW 967 (1884):

"The affidavit should state the facts of inquiry and investigation, so that the court can see that the conclusion that the party cannot be found for the reason stated is a reasonable one upon such facts."

The plaintiffs bear this burden so that the trial judge and appellate bench may make an informed and reasonable determination.

The nature and extent of efforts to locate and

Department of Corrections, but has not reported to his parole officer for a long period of time, and his present whereabouts are unknown to his parole officer, and, defendants Paul Hines and Willie Davis' whereabouts are totally unknown to plaintiffs.

"3. That plaintiffs have made diligent attempts through members of their office staff and outside investigative agencies to locate the defendants, but has *[sic]* been unable to do so."

notify parties under normal methods of service, sufficient to justify the ordering of substituted service under Rule 105.8, will vary according to the circumstances presented in each case. However, the efforts required should be evaluated at least in part according to the type of substituted service proposed by the party seeking relief.

In this case, the plaintiffs requested substituted service by publication and mailing to one defendant's last known address. Under this rule, the use of publication as a notice-giving device should be limited to discrete circumstances where a strong specific factual showing is made that notice cannot reasonably be effectuated in the manner provided under other rules and that means which are better calculated to give notice than publication are not reasonably available or feasible.

Therefore, we remand the *Rodgers* case to the trial court so that plaintiffs may be permitted to show that they did indeed satisfy the requirements of GCR 1963, 105.8. If plaintiffs can demonstrate to the trial judge's satisfaction that, prior to the time substituted service was originally ordered, they had exercised due diligence to locate defendants but were unable to serve them under other rules and that means better calculated to give actual notice than publication were not feasible, the judgments of the trial court and the Court of Appeals shall be affirmed. If plaintiffs are unable to make such a showing, we would reverse and require the trial court to enter an appropriate order of dismissal.

*Krueger* is reversed and remanded for further proceedings in accordance with this opinion.

WILLIAMS, LEVIN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

RYAN, J. *(dissenting in Krueger; concurring in Rodgers).*

### *Krueger*

I dissent from the opinion of the Court in *Krueger* because I am not persuaded that the trial court abused its discretion in refusing to permit the particular substituted service requested by the plaintiff-appellant.

Our court rule is explicit. GCR 1963, 105.8 provides:

"The court in which an action has been commenced may, in its discretion, allow service of process to be made upon a defendant in any other manner which is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard, if an order permitting such service is entered before service of process is made upon showing to the court that service of process cannot reasonably be made in the manner provided for under other rules."

While minimum due process standards might be satisfied in a given case by service of process upon a liability insurance carrier, it is for the trial judge to determine, in the exercise of his discretion, on a case-by-case basis whether a specifically proposed "other manner" of service "is reasonably calculated to give * * * actual notice". Here, the trial judge was informed that the insurance company had received no premium payments and had no contact with the insured for almost three years. He also knew that the plaintiff's letter to the defendant's last known address had been returned unopened and that the best efforts of two investigators had failed to locate the defendant. Certainly in the face of those facts the trial judge committed no abuse of discretion in concluding that service

upon the insurance carrier was not "reasonably calculated to give [defendant] actual notice" of the lawsuit.

By the adoption of GCR 1963, 105.8, this Court determined that the minimum due process requirement of notice of the pendency of a civil lawsuit would not be the standard in Michigan. Rather, for us, the right to obtain service of process in a manner other than that "provided for under other rules" was made dependent upon the judgment of the trial court in the exercise of its discretion that such "other manner" is reasonably calculated in a given case to give "actual notice" of the pendency of the proceedings.

In my view the trial judge in this case did not abuse his discretion in declining to approve the service upon the liability insurance carrier, given the facts with which he was presented.

### Rodgers

I concur in the reasoning and conclusion of my colleagues in the majority with respect to *Rodgers.*

COLEMAN, C.J., and KAVANAGH, J., concurred with RYAN, J.