## PROSOLI v MULLINS

Docket No. 52625. Submitted June 1, 1981, at Detroit.—Decided November 2, 1981.

John and Frances Prosoli brought an action against Ivan Mullins for damages for personal injury and loss of consortium arising out of an automobile accident in the Wayne Circuit Court on April 17, 1975. Plaintiffs were unable to personally serve defendant and moved on March 12, 1976, for substituted service. The circuit court ordered service by leaving copies of the summons, complaint, and order for substituted service with any suitable member of defendant's family found at two addresses claimed by plaintiffs to be defendant's last known addresses, tacking copies of the various documents on the premises of the two last known addresses, and posting copies of the applicable documents by certified mail to defendant's last known addresses.

Defendant specially appeared and moved to quash the substituted service and to set aside the order for substituted service. In an affidavit filed with this motion, defendant averred that he had left Michigan and become a permanent resident of South Carolina in April, 1975, and that he was not aware of the pending action until March, 1979. The circuit court granted defendant's motion on April 27, 1979, concluding that the order allowing substituted service was not reasonably calculated to inform defendant of the pendency of the litigation and that there had been no proper showing that personal service of process could not reasonably have been made in accordance with the court rules. On June 29, 1979, plaintiffs personally served defendant, using the original summons, at his domicile in South Carolina. Defendant again appeared specially to quash the service. Plaintiffs moved for reconsideration of the order quashing the substituted service. The court ultimately denied plaintiffs' motion and granted defendant's motion. Plaintiffs appealed. *Held:*

1. A trial court has discretion to permit service of process by alternative means when personal service cannot be perfected.

REFERENCES FOR POINTS IN HEADNOTES
[1] 62 Am Jur 2d, Process §§ 65–68.
[2] 62 Am Jur 2d, Process §§ 1, 5, 27 *et seq.*

However, the alternative service must be reasonably calculated to give the defendant actual notice of the proceeding. There was nothing to indicate that the method authorized was calculated to give the defendant notice of the proceeding.

2. Later personal service in South Carolina was not effective inasmuch as the original summons expired 180 days after the complaint was filed by virtue of a court rule enacted after the filing of the complaint but prior to the personal service. The court rule changed judicial procedure and was applicable to all further proceedings. Service of a summons is a "proceeding".

Affirmed.

1. PROCESS — COURTS — ALTERNATIVE SERVICE — COURT RULES.

A trial court has discretion to permit an alternative means of service where personal service of process cannot be effectuated; such an alternative method must be reasonably calculated to give the defendant actual notice of the proceedings (GCR 1963, 105.8).

2. ACTIONS — PROCEDURE — SERVICE OF SUMMONS — COURT RULES.

Changes in judicial procedure apply to all further proceedings in pending actions; service of a summons is a proceeding apart from its issuance.

*Barron & Knoppow, P.C.,* for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Thomas P. Rockwell* and *Mark D. Willmarth),* for defendant.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

BRONSON, P.J. Plaintiffs appeal as of right from orders entered in the Wayne County Circuit Court quashing service of process by substituted means, setting aside a default judgment entered against defendant, and granting defendant's motion for accelerated judgment.

On April 17, 1975, plaintiffs filed a complaint seeking damages for personal injuries and loss of

* Circuit judge, sitting on the Court of Appeals by assignment.

consortium arising out of an automobile accident which occurred on March 31, 1973. Plaintiffs were unable to personally serve defendant and moved on March 12, 1976, for substituted service. This motion was granted. The circuit court order provided for service by: (1) leaving copies of the summons, complaint, and order for substituted service with any suitable member of defendant's family found at two addresses claimed by plaintiffs to be defendant's last known addresses; (2) tacking copies of the various documents referred to above on the premises of the two last known addresses; and (3) posting copies of the applicable documents by certified mail to defendant's last known addresses.

Defendant specially appeared and moved to quash the substituted service and to set aside the order for substituted service. In an affidavit filed with this motion, defendant averred that he had left Michigan and became a permanent resident of South Carolina in April, 1975, and that he was not aware of the pending action until March, 1979. The circuit court granted defendant's motion on April 27, 1979. The court concluded that in retrospect the order allowing substituted service was not reasonably calculated to inform defendant of the pendency of the litigation and that there had been no proper showing that personal service of process could not reasonably have been made in accordance with the court rules.

Subsequent to the circuit court's order, on June 29, 1979, plaintiffs personally served defendant, using the original summons, at his domicile in South Carolina. Defendant again appeared specially to quash the service. Plaintiffs responded by moving for reconsideration of the order quashing the substituted service. The court ultimately de-

nied plaintiffs' motion and granted defendant's motion.[1]

On May 22, 1980, codefendant, Peter Soyk, doing business as the Lorraine Cab Company, was dismissed from the action. According to defendant, plaintiffs and Soyk ultimately settled.

Plaintiffs first contend that the circuit court abused its discretion in quashing the substituted service of process. Resolution of this issue depends on whether the substituted service was reasonably calculated to reach interested parties. See, *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 319; 70 S Ct 652; 94 L Ed 865 (1950), *Krueger v Williams,* 410 Mich 144, 159; 300 NW2d 910 (1981), *Moyer v Lott,* 86 Mich App 186, 190; 272 NW2d 232 (1978), *lv gtd* 406 Mich 1010 (1979).

In the instant case, the order for substituted service was originally granted based primarily on the affidavit of Gerald Penfil, a private detective, who was hired by plaintiffs' counsel to locate the whereabouts of defendant.[2] This affidavit provided as is pertinent:

"2. That he visited said defendant's last known address at 7551 Inkster, Westland, Michigan, and found that said defendant no longer resided at said address.

"3. That he has visited other possible addresses of said defendant and found no information as to the whereabouts of Ivan Mullins from the present residents and neighbors.

"4. That diligent inquiry has been made through the

[1] Defendant asserts in his brief that plaintiffs obtained a default judgment against him based on the personal service effected in South Carolina. However, neither the docket record nor the court file indicates that a default judgment was ever entered against defendant.

[2] Plaintiffs' counsel also filed an affidavit from which the address of 1943 Stieber, Westland, Michigan, was obtained. However, as the circuit court noted in its opinion denying plaintiffs' motion for reconsideration, the attorney's affidavit was based on information obtained from Penfil.

post office, Michigan Secretary of State and the telephone company for a current address on said defendant, to no avail.

"5. That this affiant believes that Ivan Mullins is evading all attempts to have process served upon him personally."

We affirm the trial court's decision to quash the substituted service. The affidavit of Penfil gives no information which would lead a reasonable person to conclude that defendant had any connection to the Inkster address at the time the order was obtained. Indeed, Penfil's affidavit affirmatively states that defendant no longer lived at the address in question. Paragraphs 3 and 4 of Penfil's affidavit, if anything, make it appear probable that defendant was no longer in Michigan when the order for substituted service was obtained. Nothing in the affidavit suggests that defendant's family might reside at the Inkster address.[3]

The mere fact that the substituted service was not successful in conveying actual notice does not necessarily result in a violation of due process. *Moyer, supra,* 190. Here, however, we conclude that the notice in issue was not reasonably calculated to inform defendant of the pendency of the action. We specifically adopt that portion of the lower court's opinion stating:

"While the Penfil affidavit states in very general terms that he 'visited other possible addresses of said defendant,' he does not describe specifically any of the 'other possible addresses.'

"While Penfil makes broad general averments about inquiring through the post office, Michigan Secretary of State, and the telephone company 'for a current address

---

[3] Similarly, nothing in plaintiffs' attorney's affidavit gives any reason to believe defendant's family may still have been connected with the Stieber address.

on said defendant,' Penfil gives no particulars. He does not say whether the inquiry through the post office was made in person, by mail, or by telephone. He doesn't identify the post office personnel with whom he communicated. He doesn't state the date or dates of his communication with the post office. He does not say whether his inquiry 'through the Michigan Secretary of State' was made in person, by mail, or by telephone. He doesn't identify personnel of the Secretary of State's office with whom he communicated. He doesn't state the date or dates of communication. He does not say whether his inquiry 'through * * * the telephone company' was made in person, by mail, or by telephone. He doesn't identify telephone company personnel with whom he communicated. He doesn't state the date or dates of communication with the telephone company.

"His statement that he found no information as to the whereabouts of Ivan Mullins from residents and neighbors is consistent with the fact, later determined by this Court, that long before Penfil filed his affidavit, Ivan Mullins had left the State of Michigan for another part of the country."

While the substituted service in this case is somewhat similar to that deemed valid in *Krueger, supra,* there exist two salient differences which render service here defective. In *Krueger,* the plaintiff also served defendant's insurer. The insurance company had undertaken negotiations to settle the controversy and was aware that suit might be filed. The service on the insurer in *Krueger,* then, made it substantially likely that the defendant would learn of the suit. In this case, however, no comparable link with defendant and the addresses which received copies of the summons and complaint was shown. Unlike the situation in *Krueger,* defendant's insurer was not served. Furthermore, the affidavits in this case suffer from the same problems which caused the Supreme Court to remand to the trial court the

matter of *Rodgers v Davis* decided under the *Krueger* entitlement.[4]

Plaintiffs also argue that personal service of the original summons on defendant is valid because the summons was governed by GCR 1963, 102 as it existed before its amendment, effective April 15, 1979. We disagree.

GCR 1963, 102.4 provided both before and after the 1979 amendment that an original summons shall expire 180 days after the complaint is filed. However, prior to April 15, 1979, GCR 1963, 102.5 provided that the clerk of the court shall "automatically" enter an order of dismissal upon expiration of the 180-day period. Whether an action was actually dismissed was deemed by the Supreme Court as contingent upon the lower court clerk actually taking the mandated action of entering an order of dismissal. *Brashers v Jefferson,* 402 Mich 399, 400-402; 263 NW2d 243 (1978).

Following the amendment, GCR 1963, 102.5 became self-executing. That is, the summons was automatically dismissed after 180 days without regard to any action on the part of the court clerk. In the instant case, the summons was issued prior to the amendment of GCR 1963, 102, but served after the effective date of the amendment.

The rule in Michigan is that changes in judicial procedure apply to all further proceedings in actions then pending. *Jinkner v Widmer,* 3 Mich App 155, 158; 141 NW2d 692 (1966), *Reid v A H Robins Co,* 92 Mich App 140, 143; 285 NW2d 60 (1979). Plaintiffs contend that there have been no further proceedings in respect to the summons after its issuance. We disagree. A proceeding is

---

[4] We do not remand because, unlike the factual posture of *Rodgers,* plaintiffs have already had an opportunity to establish before the trial judge that they satisfied the requirements of GCR 1963, 105.8.

literally nothing more than a transaction, event, or happening. The service of the summons, itself, constituted a proceeding and, since under the amended GCR 1963, 102 the summons was no longer valid because it was older than 180 days, the dismissal was proper.

If the application of the amended rule would work an injustice to plaintiffs, our result might be different. See GCR 1963, 14. However, we are convinced that the dismissal worked no injustice in this case. Even prior to the amendment of GCR 1963, 102 a summons was supposed to expire and result in the dismissal of the action after 180 days. It was a fortuity that the court clerk in this case neglected to perform his duty under the court rule, thus resulting in the continued life of the action. Plaintiffs had no right to expect the action to continue beyond the 180-day period of GCR 1963, 102, because they had no right to rely on the clerk's failure to perform his duty as imposed by the rule.

Affirmed. No costs, a question of first impression involving the proper construction of the court rules under consideration.